Ms. Liz Rearden. Good morning, Your Honors. This is Shannon Liz Rearden for the plaintiffs, and I believe I've reserved two minutes for rebuttal. Okay. So the case that we have before you today, it's an extremely important question under Connecticut law. As we set forth for you in the briefing, we urge this court to certify this case to the Connecticut Supreme Court. This is really the exact same case, factually, as a case that was certified by a Massachusetts federal court to the Massachusetts Supreme Judicial Court in the Awuah v. Coverall case, which addressed the question of whether cleaning franchisees who alleged that they were misclassified as independent contractors could be required to pay for their jobs in the form of what were called franchisees and have other deductions made from their pay, including for such things as the equivalent of workers' compensation, which by statute, both in Massachusetts and in Tennessee. So Connecticut, like Massachusetts, has a very broadly worded wage statute, and Connecticut has an even more specific statute on point to the situation, Section 3173B, which is known as the Anti-Kickback Statute, which expressly prohibits an employer from requiring any sum of money or deduction for wages for securing employment, which is exactly what these fees are, and as the Massachusetts Supreme Judicial Court in Awuah determined these fees to be. The Connecticut, there is a district court in Connecticut that has already recognized that requiring misclassified independent contractors to pay money to effectively buy their jobs and have deductions from their pay would violate the Connecticut wage law. That's the case we cited to you of Bokanowski, cited by Judge Janet Hall, 2016 Westlaw 11547577. So the district court in this case simply did not believe that Connecticut law would prohibit the deduction of these fees or charging fees for a job as the plaintiff alleged and just discounted the Awuah v. Coverall case as a case for Massachusetts, but without any analysis of the fact that Massachusetts law was similarly broad, but their state Supreme Court held that. Well, there are some, there are some distinctions between Connecticut law and Massachusetts law, right? Massachusetts doesn't have a franchise act and Connecticut does, and we have these cases from the Connecticut Supreme Court that say when you have an employment agreement that agrees to certain monies being taken out of wages, they don't, or are being, you know, being remitted to the employer, they don't count as wages. And so aren't we in a different position where we have a precedent from the Connecticut Supreme Court on point and we have a different legal landscape in the form of the franchise act? Um, so no on both counts. So first of all, the cases that the district court referred to that I believe you're referring to about money being paid, provided for in the statute is in Connecticut law. Um, Massachusetts has the same law. The Massachusetts Supreme Judicial Court has also reached the same conclusion as the Connecticut Supreme Court did in my tick and Geithsen that, um, commissioned employees can have a formula to determine how their pay is calculated. And that's the Weidman case from the Massachusetts SJC. There's no difference between Massachusetts and Connecticut law on that point. And with respect to the franchise act, there is nothing in Connecticut law that says that if you're a franchisor, you can't be subject to misclassification claims. And that's decided by the, so your basic argument is that the existence of a franchise law in Connecticut doesn't make it different from the Massachusetts situation, or at least we in terms of freedom of contract and so on is the same in both states. Is that your argument? Yes. Yes. In fact, the Massachusetts, I'm sorry, the Connecticut Supreme Court in the Jason Roberts case specifically held that simply because you're classified as a franchisee does not mean that you can't be an employee. Connecticut has the same ABC test, essentially the same ABC test that Massachusetts uses to determine whether someone's been misclassified. And in Jason Roberts case, the court held that the same standard applies, even if someone is classified as a franchisee. So and there's another case that we cited a relatively recent case to Costa versus Vanguard, where a court held that cleaning franchisees just like the plaintiffs in this case were misclassified under Connecticut law under the ABC test, just like under Massachusetts law. There's no difference. Well, are you saying that they're misclassified as franchisees or that somebody can be both the franchisee and an employee at the same time? Well, they are misclassified as independent contractors. In Massachusetts, again, where the law is pretty much identical to Connecticut law, the Massachusetts SJC said in another coverall case, coverall versus commissioner, that we're not going to refer to the claimant here as a franchisee because we hold that she's been misclassified as an employee. The court doesn't really need to address counsel counsel counsel. The district judge made several decisions in your favor. That is said that under Connecticut law, your clients were employees as well as franchisees. And several of those decisions, if we were to agree with you to certify, shouldn't we certify those questions as well? That is, ask Connecticut to tell us the whole thing about whether you are whether the decisions of a district court for you are not as clear under Connecticut law as the decision of the relationship of franchisees to employees is not that clear. So if we certify, shouldn't we certify the whole thing? Well, I wouldn't have an objection to that. I would just say that the Connecticut Supreme Court in the Jason Robert case, I believe has already answered that question. So they can also, if they're taking the other one, they can always say we needn't bother. We've already answered. But that's correct. But I'm sorry, did the district court actually decide that your clients were employees or said that he did not need to decide that question because even assuming they're employees, they would not have a claim? Well, the district court denied Janet King's motion for summary judgment. We cross moved for summary judgment and the court held that our motion was after the deadline for summary judgment. So it didn't decide our motion for summary judgment. Of course, under Massachusetts law, there was a question of fact as to whether your clients were employees or independent contractors, but didn't resolve that question and said it didn't need to because it could resolve the case on other grounds. Right. So we would be certifying to the Connecticut Supreme Court questions that assume that your clients are employees without a determination by any court that they are. Right. Well, well, I mean, yes, that that would effectively be right. The district court didn't actually say that there were fact issues that just declined to rule on our motion for summary judgment because it claims that the motion was filed out of time. So you're correct. Well, did the district court have a question of material fact as to whether they were employees? It didn't actually. Well, because it didn't have occasion to determine our motion for summary judgment, but it did deny Janet King's motion for summary judgment. So we contend that there are no issues of material fact that it should have been decided in our favor. But as the record stands, that's correct, that there's been no determination made as to whether they are employees. So if the Connecticut Supreme Court were to answer these questions to say that, you know, in cases of someone who is not an independent contractor, but as an employee, certain rules apply, that would not be dispositive of this case because we would still need to decide whether your clients or someone would still need to decide whether your clients are employees. Right. That's an unanswered question in this litigation. Well, well, that is true. And plaintiffs would have no objection to all of that going to the Connecticut Supreme Court. I agree with that. That's been a hotly- Well, I mean, that's for the Connecticut Supreme Court to determine in the first instance. The Connecticut Supreme Court might hold that as a matter of law, your clients were not employees. Doesn't, you know, we don't know. Connecticut law on all of these things is, well, as so often is the case, Connecticut doesn't have that much law. When we're dealing with New York, we've got hundreds of cases. In Connecticut, we don't have that much. Correct. Can I turn back to- That's the area that needs to be- Sorry. Well, can I turn back to Mytick and Gysin? So normally we don't certify when we have binding precedents from the Supreme Court of the States. And here we do, and the district court thought they were dispositive. So why isn't it the case that when your clients agreed in their contracts, which you might be in an employment agreement, but might also be a franchise agreement, why wouldn't that be dispositive that even if they were employees, they agreed to these withholdings? So Mytick and Gysin are just simply different from this case. Those were cases involving not only acknowledged employees, but they were commissioned employees. And the court held the details of their commission agreements that they freely had agreed to and determined the formula for which they would be paid. Here we have janitors who claim that they were misclassified and the payments that they're contesting in this case are prohibited by Connecticut law because they include a payment for a job that wasn't at issue in the Mytick or the Gysin cases, the upfront fees that had to be paid to even get the work in the first place. And also we're- You don't dispute that franchises are legal in Connecticut, right? Not disputing that franchises are legal in Connecticut, correct. So when somebody is a franchisee, there are going to be franchise fees, right? Is your position that all franchise fees are unlawful or violate the statute? No, no. They are unlawful when the workers are misclassified as franchisee independent contractors as opposed to employees. What you're saying is that the relationship between the wage law of Connecticut and the franchisee law has not been determined by the Connecticut court. Whether one trumps the other has not been determined. Well, I think it has in the Jason Roberts case, but I agree there is not a lot of case law from Connecticut. And I think getting clarification from the Connecticut Supreme Court- But it sounds like your position is that everything depends on the idea that your clients were misclassified because if they were not misclassified, then you wouldn't have an objection to the fees. And since that is an unanswered question, doesn't that need to be answered before the Connecticut Supreme Court has before it a dispositive issue that could resolve this litigation? Well, I mean, I believe the Connecticut Supreme Court could decide this all together because the, yes, I mean, the issue here is that if these payments were for a job, they could not be allowed. Actually, in the Massachusetts case- But if they are franchise fees, it sounds like you're saying that they're allowed. So the whole question is whether you are bona fide franchisors or employees, right? Right. Well, so when this question got certified to the Massachusetts Supreme Judicial Court, the court, the question about whether they had been misclassified wasn't certified. It was just the question about whether if they have been misclassified, are these fees illegal? So it would be the same question that we're talking about here. But again, plaintiffs have no objection to having the whole thing sent to the Connecticut Supreme Court because I do think there is a lack of- I mean, but can it be sent to the Supreme Court? I mean, do you argue in your brief before our court as to why the franchise agreement was really an employment agreement and not a bona fide franchise agreement? Well, yes. Jana King, in his response brief, made the argument that in the alternative, the plaintiffs were properly classified. And we responded to that in our reply brief. And we cited to the DaCosta versus Vanguard case- You responded to this in your reply brief, but you didn't raise the question to our court as to whether you were really employees versus franchisees. So you're really only contesting the district court's determination that assuming your employees MITEC and GESN would mean that there wasn't a violation of the Connecticut statutes in this case, right? Well, correct. Because we weren't- There was not a decision adverse to us on that point. But then Jana King argued in the alternative that summary judgment was properly granted in their favor because the workers were properly classified. So we responded to that in our reply brief. Okay. Well, you've reserved some time for a rebuttal. So we'll hear from you again. Unless my colleagues have questions, further questions, let's turn to the appellee, Mr. Van Ort. Good morning, Your Honors. This is Aaron Van Ort for Jana King. In this case, the plaintiffs wanted to run their own small businesses, but they didn't want to do it alone. So they contracted with Jana King to help them. And in their contracts, they agreed what each of them would do and then how the revenue from the clients would be divided between them. It's undisputed that those agreements were honored and plaintiffs were paid everything they were owed under those contracts. In this case, they're arguing that their agreements were overridden by two specific provisions of Connecticut's wage statutes. And their argument is they say legally they were employees, even though they had intended to be independent contractors and therefore these wage statutes applied. The district court assumed that plaintiffs could prove an employment relationship and held that even if they did, their claims failed under binding Connecticut Supreme Court precedent. That was right. I'll start, Your Honors, with the wage withholding claim. This is the one where Connecticut Supreme Court has three precedents directly on point here. It's Middick and Gysin and then Ziotis. And all of those precedents say the same thing, which is that under this particular section, Section 3171A, the statute doesn't create any substantive rights. It doesn't say what you have to be paid. It just says that whatever the parties agree to, the statute will enforce. It said that in Gysin. Yeah, but is there any Connecticut case that deals with the relationship between the wage statute and the franchise statute? That is, Connecticut cases have said that people can agree under franchise and that that is then protected by contract. But the argument that is being made here is the relationship between the wage statutes that deal with employees and the statutes that deal with franchisees. And what that relationship is, we don't know. In Massachusetts, where there is no franchise statute, but there is the same set of holdings about people being able to contract, when it got to the Massachusetts Supreme Court, they said that the employment control wage statutes dominated. I don't know that Connecticut would do the same thing, but isn't that an open question? I think, Your Honor, that if this court were to get to the ABC test and the underlying question of whether the franchisees were classified as employers or independent contractors, I do think there isn't a Connecticut Supreme Court directly addressing that. And so if you were to get to the ABC test, that is an open issue on there. And you're right that Connecticut is different from Massachusetts because it does have a franchise statute. So, but if we were to certify, we should also certify where they stood under the ABC test. You agree to that? I think that that would be the question that would actually be open for the Connecticut Supreme Court. But I agree with Judge Banaschi that on this record, it's not ripe. Contrary to what counsel on the other side said, the district court did expressly find a fact question here, that page addendum 67. And it says this court found there is a genuine issue of material fact as to whether plaintiffs were misclassified. Connecticut in its certification is not as definite as New York about the question having been to be the determinative question. Connecticut in its certification is more open than New York, just as Connecticut is more open by allowing certification by a district court rather than just the Court of Appeals. Yeah, the Connecticut statute allows it if the answer may be determinative. You're right, Your Honor. Connecticut is much more open to certification. This court's precedents say that there isn't certification when there are sufficient precedents to decide. And here, the grounds that the district court decided on is that it said, assume the outcome of that question that Your Honor is talking about. Assume that they're classified as employees. Even so, these claims under the wage statutes still fail. But I still have a problem with why, despite the existence, the lack of a franchise statute in Massachusetts, that basic question of the relation of people who are franchisees, because people can be franchisees in Massachusetts, and the wage laws was decided by Massachusetts in the opposite way that the district court did here, and why that isn't a possibility in Connecticut if Massachusetts, faced with essentially the same issue, decided the other way. I don't know that Massachusetts decided correctly, but it's their law. Yeah, Your Honor, it is Massachusetts' law, and of course, this isn't Massachusetts. But you're right that the factual scenario is similar, but there are really key differences in the AWUA decision, which is the Massachusetts one we're deciding to, the question of classification was not certified to Massachusetts Supreme Court. That had already been decided by the lower court. They had been decided they were employees. The only issue- Well, but the only reason you say that that isn't necessary here is because you're assuming the second decision, the one that in Massachusetts went against you. That's why I think if we were to certify, we would also have to ask the first question, because then it may be that Connecticut would say, but these people still win because they're not employees. What the district court found not necessary, because it made a decision different from the Massachusetts on the second issue, is the one that I just don't know how we can be sure of what Connecticut thinks. Yeah, Your Honor, there is another difference on what I think you're talking about. The second issue is the remedies issue here. And on that one, there's a direct difference between Massachusetts and Connecticut, which is why it was there. Massachusetts allows an action not just for lost wages, but also for damages incurred. And the whole question in the AWUA case was, what were the damages? There is no action in Connecticut for damages. It's only for lost wages. It's Section 31-2. How does that make a difference on the question of whether you have given up your rights by being a franchisee or not? How does that, which is a legal question, how does that differ on whether you get just passed wages or damages as well? Oh, it doesn't on the underlying question, Your Honor. But I don't think the question here is whether you give up your rights as a franchisee, because like I said, the district court assumed that they were employees. They assumed they hadn't given up those rights. And it said there still isn't a claim. It said even if you're employees, this would be enforceable because in Connecticut... Right, so I think as you were saying a moment ago, that means that if we were to certify, we would first have to disagree with the district court that the parties, even assuming that they're employees, still wouldn't have a claim. We'd have to assume... That's right. We'd have to conclude that the district court was wrong about that. So why don't you address the argument that the appellant raised about those MITEC and GEISEN only apply to commissioned employees, and that's different from employees who are misclassified as independent contractors? Yes, Your Honor. There's no such limitation in MITEC and GEISEN. In fact, this situation is more favorable to dividing up the revenue than that one, because there it was just commissions based on their own wages. Here what's being divided up is the gross revenue of the business. The agreements here did not say the plaintiffs are going to be paid for their own labor. It said they're going to be paid for their business. And what happened here is Jana King and the plaintiffs said, we're going to have this business. Jana King is going to provide some support. The franchisees are going to provide some support, and this is how we're going to divide up the gross revenue. Of course, everything has to be paid out of gross revenue because there is no other revenue. And so what happened here on specific things, the workers' comp, for example, here, it's undisputed that the workers' comp payments were made, and it's also undisputed under this record that it was made by Jana King. The plaintiff's brief at pages six and seven says that, and their complaint pleaded it, because the way they set up this financial arrangement, they said, okay, franchise owners, you can cover the insurance if you want to. If so, we'll give you a greater cut of the gross revenue so you can do that. Or you can choose to have us, Jana King, make those payments, and if so, we'll get a greater cut of the gross revenue to make those. The plaintiffs here all chose for Jana King to cover the workers' comp, so the workers' comp was covered. The same thing for the finder's fees, which is the other thing they complain about. What this contract said is that if Jana King does the sales work to get the accounts on the front end, Jana King will get the portion of gross revenue going to the sales function. But if the franchisors, if the owners do the sales function, they'll get the revenue. That's undisputed, too. That's at Joint Appendix 246, the plaintiff's testimony. And so what happened here is the classic Connecticut situation where the parties agreed how they were going to divide up the revenue, and because their contract was honored, the Connecticut Supreme Court decisions control and says you enforce the contract, and that's true, regardless of... If they are, in fact, employees, and the district court said they could be employees, it didn't resolve that question, if they are employees, wouldn't that gross revenue otherwise go to them as wages? No. No, the gross revenue of the business doesn't automatically go to an employee. In Mittig and the others, all they got was paid...those were shoes salesmen, so they got paid based on... Is that clear, or is that...is that clear in Connecticut, or is that...if they...see, if we assume, as the court assumed for purposes of that, that these are employees, then isn't what happens in the relationship to these wages what Connecticut has never really spoken to? No, I don't think so, Your Honor, because it doesn't matter how they get to be employees. What Connecticut says is once you are employees, you can agree on whatever formula you want to define wages. Where do you find that? I don't...I don't see that in the Connecticut case. That's why...that's my question, but I have a different, very funny question, and that is, assuming, which I'm by no means clear, that we were to decide to certify that certification was appropriate, should we certify, or should we send it back to the district court with instruction that it certify? Because in Connecticut, the district court can certify, and when the Supreme Court has decided certification was appropriate, they haven't certified, but they've sent it back to the courts of appeals and told them to do the certification. And in a funny way, that is what the situation is in Connecticut. We've never seen it in New York, because in New York, district courts can't certify, but in Connecticut, they can, and many district judges, Judge Underhill in several cases, have certified. So, what would be the appropriate move in that? Your Honor, that's a question I haven't considered, but I think, as you've pointed out, the statute allows, and the authority allows, this court to certify, as well as the district court. Yeah, so we could do it, but the question is, what is more appropriate when the district court could do it, but declined to, whether we should tell them that they should figure it out? I think you would save the step, Your Honor, because it seems that if this court were going to certify, it would have ideas on which issues would be certified. And so, it ought to do it itself, and not just go down and tell the district court to do what this court was going to do anyway, I think is what the procedural step is. But to go back to the merits here on this, the bottom line here is that Connecticut is much more of a freedom of contract state than Massachusetts, to take the example. I don't know, as a Connecticut resident, that I would feel that way. It sometimes troubled me that Connecticut was not. Ah, well, in this particular place, they've emphasized it, Your Honor, the Connecticut Supreme Court. So, and this is basically what they say. They recognize that in this scenario, when you're going into business, you could arrange it a whole variety of ways. So these plaintiffs, they could have just gotten jobs being straight up employees and get paid hourly wages for whatever their own work was. That's one extreme. Or they could have tried to set up their own businesses all on their own, without any help, no brand, no nothing. They chose something in the middle. They said, we want more autonomy than an employee, and we want the chance to profit, not just from our own work, but from the work of everybody we hire on that. But we want the brand support. And then they set a contract that represented where they were. Well, you're explaining why it's reasonable what they're doing, and so on. But the legal point is the point the Connecticut Supreme Court made in my tech, which is that the Connecticut statutes that limit what employers could do are designed to protect the integrity of the wage agreement, not to control what wages are to detect that relationship. Right? Is that your point? That's it. Your Honor, that's exactly the point I'm getting to. And you're saying that that is different from the Massachusetts approach? Oh, absolutely. Because in Massachusetts, in a WUA, for example, the certified question, a WUA that Massachusetts Supreme Court answered one of the wage questions there directly contrary to how the Supreme Court of Connecticut did in my tech, in my tech that the fight was over when the wages were vested. And the Connecticut Supreme Court said it's when the agreement says they're vested. In Massachusetts, they came out exactly the opposite way and said they're vested when the work is performed, regardless of what the parties agreed to. And so that very case illustrates one of the differences. There are basically two substantive floors in Connecticut. There's a minimum wage and an overtime. And plaintiffs haven't brought a minimum wage and haven't brought an overtime claim. Their claim is based on their agreement, but it's undisputed the agreement was performed. And to the other point, go ahead, Your Honor. It's just, you're overtime. Let me just wrap up that final point, and then we'll hear back from you, Bill. Okay. I was going to say, the final point, Your Honor, is that you're right. In franchise, nobody has said that you can't be both a franchisee and an employee. And in fact, it's the Jason Roberts decision. Counsel said it was a Connecticut Supreme Court decision, but it's actually a court of appeals decision. But it says you can be both. And so for that reason, we think the district court should be affirmed. Thanks very much, Your Honors. Okay. Thank you very much, Mr. Van Oort. Let's turn back to Ms. Riordan on rebuttal. Thank you, Your Honors. So some of what you were just discussing were exact issues that were for the Massachusetts Supreme Judicial Court in the Iwua case. The question about whether the gross revenue was wages or not, that was an open question in Massachusetts. And because these payments, the court concluded, would violate public policy if the workers were misclassified. The court found that to be a violation of that. Well, I think the point about gross revenue was, if in the Connecticut Supreme Court decisions, the Connecticut Supreme Court said, even when you have commissioned employees who are working for commission, so working explicitly for wages, the employment agreement controls. And if they agree in the employment agreement not to receive certain funds that doesn't count as wages, they certainly would find that in the case of a franchise agreement, right? Wouldn't the argument be stronger for commissioned employees about having money taken out of their wages than for franchisors? Well, the Massachusetts law and Connecticut law are the same on this point. Massachusetts law also says that commissioned workers can agree to what the formula is and when a commission is required. Well, I mean, the statutes might be the same, but are you disagreeing that the Connecticut Supreme Court has decided that the wage agreements, the employment agreements controls, whereas the Massachusetts Supreme Court seems to recognize more leeway for the statutes to override the employment agreement? Well, again, it's just the AWULA situation has not been put to the Connecticut Supreme Court. What the Connecticut Supreme Court has decided is these commission cases, which came out the same way as Massachusetts come out on commissions, for example, in the Weidman case. The point is, is that these are not commissioned workers. They're not salespeople. These are cleaning workers. And I also wanted to point out in the MITEC and GEISEN cases, they did note that deductions would not be legal if they violate public policy. So those cases themselves recognized an exception for payments that would violate public policy, which is exactly what we say the payment for the work is. In the commission cases, there was no payment that the workers had to make up front to even get the job. But the public policy can't do the statutes that you're relying on about taking wages because the holding of those cases is that if you agree to the fees in your employment agreement, they don't count as wages and so aren't covered by those statutes. Wouldn't you have to point to some other public policy that the payments would violate? Yes, the public policy is contained in the Connecticut Anti-Kickback Statute 31-73B, which says that an employer cannot require any sum of money to secure employment. So the payments that the workers made here, they had the choice of either making them up front or making a down payment up front and then paying them off over time by having deductions taken out of their pay. So clearly these were payments for work. Commissioned employees in the MITIC and the GEISM cases didn't have to pay anything like this to secure employment. Just the question is, after the payments were made, after the company had received the care... Counsel, you are saying that the arrangements that were made here clearly violated the Connecticut state, Connecticut wage laws in some particular. So that what you're saying again is that the question of whether the decisions under franchise laws or these decisions under the wage laws trump each other, and on that Connecticut hasn't spoken. Is that what you're saying? Yes, yes, that is correct.  But to conclude that these payments were paying for securing a job, doesn't every franchisee pay for the franchise? So wouldn't you essentially be saying that you can't have money? Yes, but we're not saying that every franchisee is an employee. We're saying in this case, the franchisees were employees. The same as in Massachusetts, the same workers for Janneking were classified as franchisees were held to be. But they could be both employees and franchisees, right? So in the case of somebody who's an employee and is also a franchisee, you're saying you can't charge those people for the franchise part of it, because then you'd be essentially requiring a payment for them to obtain a job. But that means that the franchisor or the franchise would have to provide the franchise for free without charging them for it, wouldn't it? Isn't that what you're suggesting? I think this issue needs to go to the Connecticut Supreme Court, because it has not addressed this question. I agree with Judge Calabresi on that point. The anti-kickback statute, if these are employees- But is it conceivable that the Connecticut Supreme Court is going to say that when somebody is a franchisee and is also an employee, the franchise has to be provided to them for free, and there can't be a fee for it? Well, they could- I think that's just so why it doesn't make sense for them to be both, and this needs to go to the Connecticut Supreme Court to sort out. The Connecticut Court could say that you have to pay, but you don't have to pay. And then in relation to how much you pay, how much work you get. That is, there are any number of ways in which the Connecticut Supreme Court could integrate these two statutes, which I'm going to face. The problem is, if somebody is both an employee and a franchisee, how do you integrate these two statutes? And it's on that that I, you know, there are any number of ways it could be put together, and I don't quite know how Connecticut would do it. Well, that was the same problem facing the Mass Supreme Judicial Court, and I apologize that I've misspoken and called Jason Roberts the Supreme Court case. Counsel corrected me that it's an appeals court case, so even though it suggested that you could be both, it appears the Connecticut Supreme Court has not weighed in on that question. So that would be a question that the court could weigh in on here, which needs to be figured out how these situations are put together. I mean, this issue is coming up in other states also, and state Supreme Courts are addressing it. California, for instance. Thank you very much. Thank you very much. Thank you very much, counsel. We have that argument, and the case is submitted. Thank you.